WALKER, Justice, for the Court:
This is an appeal from the Chancery Court of Calhoun County, Mississippi, which validated the issuance of $650,000 in general obligation bonds by Calhoun County for the purpose of erecting and eqiup-ping a nursing home and related facilities in said county. We affirm.
An election was held in Calhoun County on the question of whether bonds in the maximum principal amount of $650,000 for the above stated purpose would be issued. Approximately seventy-eight percent of the 3,435 persons voting favored the issuance of the bonds.
The principal assignment of error is as follows:
The Court erred in overruling Appellants’ objection to the validation of the bonds for the reason that the Resolution declaring the intention to issue the bonds sought to be validated in this case, which Resolution was passed by the Board of Supervisors of Calhoun County on September 6, 1974, fails to state whether or not the nursing home facility would be operated by Calhoun County separately or jointly with one or more counties, cities, towns or supervisors districts. . . .

Mississippi Code Annotated section 41-13-15 (Supp.1975) provides, in part, as follows :
Any county, city, town, supervisors district, judicial district or election district of a county, separately or jointly with one or more other counties, cities, towns, supervisors districts, judicial districts or election districts of the same or other counties, may acquire and hold real estate for a hospital, nurses’ home, health center health department, diagnostic or treatment center, rehabilitation facility, nursing home and related facilities and thereon establish, erect, build, construct, remodel, add to, equip, operate and maintain community hospitals, nurses’ homes, health centers, health departments, diagnostic or treatment centers, rehabilitation facilities, nursing homes and related facilities within the limits of any such political subdivision or parts thereof. . . . Mississippi Code Annotated section 41-13-19 (Supp.1975) states in part:
Such counties, cities and towns, supervisors districts, judicial districts and election districts of a county are authorized and empowered to make appropriations of the funds thereof for the purpose of sections 41-13-15 to 41-13-51, and are hereby authorized and empowered to issue and sell the bonds, notes or other evidences of indebtedness thereof, for the purpose of providing funds with which to acquire real estate for and to establish, erect, build, construct, remodel, add to, acquire, equip and furnish community hospitals, nurses’ homes, health centers, health departments, diagnostic or treatment centers, rehabilitation facilities, nursing homes and related facilities under the provisions of such sections. . . .

Before issuing any such bonds, notes or other evidences of indebtedness secured by a pledge of the full faith, credit, and resources of the issuing entity, the board of supervisors, acting for a county or supervisors district, judicial district or election district thereof, or the mayor and board of aldermen, or city council, or other like governing body, acting for a city or town, shall adopt a resolution declaring its intention to issue the same, stating the amount and purposes thereof, whether such hospital, nurses’ home, health center, health department, diagnostic or treatment center, rehabilitation facility, nursing home or related facilities are to be erected, acquired, remodeled, equipped, furnished, maintained and operated by such county, city, town or supervisors district separately, or jointly with one or more other counties, cities towns, supervisors districts, judicial districts or election districts of a county, and fixing the date upon which further *909 action will be taken to provide for the issuance of such bonds, notes or other evidences of indebtedness. . . .
(Emphasis added).
The resolution adopted by the Board of Supervisors on September 6, 1974, declaring the intention of the Board to issue bonds of the county in the maximum principal amount of $650,000 for the purpose of erecting and equipping a nursing home and related facilities in said county and providing for the holding of a special election recited that the estimated cost of erecting and equipping such a home was estimated to be $650,000; and, that a special election would be held at each and all of the polling places established for the holding of general elections in said county and that all qualified electors of Calhoun County would be entitled to vote in the election.
The resolution did not state whether the nursing home was to be maintained and operated by Calhoun County separately or jointly with some other political subdivision. The appellants contend that the failure to make such a recital in the resolution constitutes a fatal defect and that all matters subsequent to the resolution pertaining to the proposed nursing home were void. We do not agree.
If the nursing home was to be operated by a subdistrict of the county or by Calhoun County with one or more other counties, cities, towns, supervisors’ districts, etc., then it would be necessary to recite such facts in the resolution. However, in the absence of such a recital and where the resolution provided that the bonds would be issued by Calhoun County; that the election would be held in all of the polling places of Calhoun County; and, that all of the qualified electors of Calhoun County were entitled to vote in such election without mention of another county, city or district, then it logically follows that Calhoun County as a whole would be the sole participant in establishing, erecting, maintaining and operating such facility.
We have considered the remaining assignments of error and find them to be without merit.
The judgment of the lower court is therefore affirmed.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and INZER, P. J., and SMITH, ROBERTSON, SUGG, BROOM' and LEE, JJ., concur.